IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Union Hospital District,<br><br>Debtor. | Case No.<br>Chapter 9 |

### MEMORANDUM IN SUPPORT OF STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. § 109(c)

Union Hospital District (the "Debtor") submits the following Memorandum in Support of its Statement of Qualifications Under 11 U.S.C. § 109(c).[1]

### I.    BACKGROUND

**A.    History of the Debtor.**

The Debtor has filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code"). The Debtor was created in 1946 by an act of the South Carolina Legislature to provide hospital facilities to the residents of Union County (the "County"). 1946 S.C. Acts 848.[2] The legislature observed the purpose of the Act was to establish a hospital for the benefit of the residents of Union County. *Id.* at § 7. The legislature created the Union Hospital District Board of Trustees (the "Board") and charged it with the responsibility of constructing a hospital, and the responsibility of making all rules and regulations for the operations and management of the Debtor. *Id.* at §§ 2-5.

Thereafter, in 1962, the General Assembly amended the Act by adding Section 3A. *See* 1962 S.C. Acts 1250. This section authorized the Board to construct, equip, maintain and

---

[1] This Memorandum is further supported by the Declaration of Paul R. Newhouse, Chief Executive Officer of the Debtor, attached hereto as Exhibit 1 ("Newhouse Declaration").

[2] A copy of this Act is attached hereto as Exhibit 2.

1

operate the Ellen Sagar Nursing Home. *Id.* § 1. The authorization also conferred on the Board the same powers and duties concerning the nursing home as the Board had concerning hospital facilities. *Id.*

B.  **Financial Issues facing the Debtor.**

Within the corporate umbrella of the Debtor are four distinct areas of services and operations:

(i)   Wallace Thomson Hospital ("Hospital");

(ii)  Ellen Sagar Nursing Homes ("Ellen Sagar");

(iii) Carolinas Health Associates ("Carolinas Health"); and

(iv)  Union County EMS ("EMS").

The debts of the Debtor consist primarily of various leases of medical equipment and ordinary course of business unsecured trade debt. For financial reporting purposes, the Debtor maintains separate records of income and expenses for each of its four service areas, but also consolidates the financial results into a consolidated financial statement. Attached as Exhibit 1 to the Newhouse Declaration are the key financial reports of the Debtor for the period ending March 31, 2014, including some comparison information to the preceding fiscal year. For the fiscal period October 1, 2013 to March 31, 2014, the Debtor showed negative Net Assets of $557,263 and negative Operating Revenues of $3,576,965, on a consolidated basis.

The Debtor has struggled to pay its debts in the ordinary course of business and therefore has accrued significant trade debt that it is currently not able to pay. Moreover, the Debtor is currently the defendant in various civil actions related to the collection of outstanding trade debt in the amount of approximately $5,600,000. The Debtor does not currently have the ability to pay such obligations and expects judgments to be entered in the cases in favor of one or more of the plaintiffs. See further discussion under Section II.A.5

## II.    ARGUMENT

### A.    Union Hospital District is an Eligible Debtor under Chapter 9.

Section 109(c) of the Bankruptcy Code sets forth the statutory criteria for eligibility as a chapter 9 debtor. The debtor must be (1) a municipality; (2) specifically authorized to be a chapter 9 debtor; (3) insolvent; (4) willing to effect a plan to adjust its debts; and (5) must also meet one of the following four requirements: (i) the debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan; (ii) the debtor has negotiated in good faith, but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan; (iii) the debtor is unable to negotiate with its creditors because such efforts are impracticable; or (iv) the debtor must reasonably believe that a creditor may attempt to obtain a preference. 11 U.S.C. § 109(c).

These requirements are to be construed broadly to provide relief to further the Bankruptcy Code's underlying policies. *See In re Sullivan County Reg'l Refuse Disposal Dist.*, 165 B.R. 60, 73 (Bankr. D.N.H. 1994). The Debtor has the burden to establish its eligibility under Section 109(c). *Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro. Dist.)*, 143 F.3d 1381, 1385 (10th Cir. 1998); *In re Slocum Lake Drainage Dist. of Lake County*, 336 B.R. 387, 390 (Bankr. N.D. Ill 2006). As is detailed below, the Debtor satisfies each of the requirements of Section 109(c), and therefore is eligible to be a debtor under chapter 9.

#### 1.    The Debtor is a Municipality.

Section 109(c)(1) requires that the debtor filing a petition under chapter 9 must be a municipality. A "municipality" is defined in section 101 of the Bankruptcy Code to mean "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40).

While the Code does not define the terms "public agency, or instrumentality of a State," a legal test to determine public agency status was established in *Ex parte York County Natural Gas Authority*, 238 F. Supp. 964, 976 (W.D. S.C. 1965), *modified on other grounds,*, 362 F.2d 78 (4th Cir. 1965), *cert. denied*, 383 U.S. 970 (1966), which held "the legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal." *Id.* (holding a gas authority with the power to issue revenue bonds was a "municipality" for purposes of Chapter 9); *see also In re Connector 2000 Ass'n*, 447 B.R. 752 (Bankr. D.S.C. 2011) (finding South Carolina nonprofit corporation organized as a "public benefit" corporation to operate a toll qualified as municipality using the *York County* public agency test). Using this public agency test in *York County*, the court in *In re Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986), determined that because the hospital was subject to control by a county board of supervisors, it qualified as a public agency and thus met the statutory requirement for "municipality" status. *See also In re Westport Transit District*, 165 B.R. 93 (Bankr. D. Conn 1994) (relying on public agency test set forth in *York County*, the court found the debtor transit district which provided public transportation services, could issue bonds, and had the power of eminent domain was a "municipality").

In this case, the Debtor is a public agency, and thus a "municipality" as defined in section 101 (40) of the Bankruptcy Code, for the following reasons:

    a. The Debtor was created by statute in the public interest.

    b. The Debtor has the power of condemnation pursuant to § 9 of the Act.

    c. The Debtor has the power to direct the assessment of taxes to pay outstanding bonds pursuant to § 16 of the Act.

    d. Originally, all members of the Board were to be appointed by the Governor of South

Carolina. See § 2 of the Act. In 1985, the General Assembly amended Section 2 of the Act. *See* 1985 S.C. Acts 294. That amendment provided that the members of the Board must be appointed by the Union County Council (the "Council"), rather than the Governor, and that the Council had the responsibility of establishing the terms of office for each member of the Board. *Id.* In 2010, Section 2 of the Act was amended again to expand the Board and adjusted the qualifications for its members. *See* 2010 S.C. Acts 322. *Id.*

Applying the public agency test set forth in *York County,* Debtor is a public agency and thus meets the statutory requirement for "municipality" status. *See In re Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986) (hospital a "municipality" because the hospital was subject to control by a county board of supervisors); *see also Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995) (finding hospital was a public corporation and instrumentality of the state for purposes of qualifying under § 1983 where the hospital that was created by statute in the public interest, supported in part by public funding, and the board members were approved by County Council).

Accordingly, the Debtor is a public agency or instrumentality of the State of South Carolina and is a municipality within the meaning of section 109(c)(1).

**2. Debtor is Specifically Authorized Under South Carolina Law to Bring Its Petition.**

Section 109(c)(2) requires that a municipality be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

South Carolina has adopted measures which expressly enable municipalities to file bankruptcy under federal law, without further restriction. S.C. Code Ann. § 6-1-10 provides:

5

> Power of political subdivisions to proceed under legislation dealing with bankruptcy or composition of indebtedness.
>
> The consent of the State is hereby granted to, and all appropriate powers are hereby conferred upon, any county, municipal corporation, township, school district, drainage district or other taxing or governmental unit organized under the laws of the State to institute any appropriate action and in any other respect to proceed under and take advantage of and avail itself of the benefits and privileges conferred, and to accept the burdens and obligations created, by any existing act of the Congress of the United States and any future enactment of the Congress of the United States relating to bankruptcy or the composition of indebtedness on the part of the counties, municipal corporations, townships, school districts, drainage districts and other taxing or governmental units or any of them.

This statute is applicable to the Debtor as the Debtor is a "taxing" or "governmental unit." While the term "governmental unit," is not defined in Title 6 of the South Carolina Code[3] or by case law, under the Bankruptcy Code, "governmental unit" is defined to include a "municipality" and an "instrumentality of a … State." 11 U.S.C. § 101(27). Accordingly, because the Debtor is a municipality under 11 U.S.C. § 101(40) and for purposes of 11 U.S.C § 109 as detailed above, the Debtor is a "governmental unit" for purposes of S.C. Code Ann. § 6-1-10. *In re Connector 2000 Ass'n*, 447 B.R. at 757 ("Because the Court has determined Debtor is a municipality, S.C. Code § 6-1-10 specifically authorizes it to file bankruptcy. Debtor meets this requirement of section 109(c).").

The Debtor is also a "taxing" unit by virtue of the powers granted it by the Act which

---

[3] "Governmental Unit" is defined in other titles of the South Carolina Code. S.C. Code Ann. § 13-1-45, which relates to the Department of Commerce's South Carolina Water and Wastewater Infrastructure Fund, defines "Government unit" as "a municipal corporation, county, special purpose district, special service district, commissioners of public works, or another public body, instrumentality or agency of this State including combinations of two or more of these entities acting jointly to construct, own, or operate a qualified project, and any other state or local authority, board, commission, agency, department, or other political subdivision created by the General Assembly or pursuant to the Constitution and laws of this State which may construct, own, or operate a qualified project." S.C. Code Ann. § 34-26-110, which relates to the South Carolina Credit Union Act, defines "Governmental unit" as "any board, agency, department, authority, instrumentality, or other unit or organizations of the federal, state, county, or municipal level of government." S.C. Code Ann. § 36-9-102, which relates to Secured Transactions, defines "Governmental unit" as "a subdivision, agency, department, county, parish, municipality, or other unit of the government of the United States, a state, or a foreign country. The term includes an organization having a separate corporate existence if the organization is eligible to issue debt on which interest is exempt from income taxation under the laws of the United States."

6

originally created the District. § 16 of the Act

### 3. The Debtor is Insolvent.

11 U.S.C. § 109(c)(3) requires that the chapter 9 petitioner be insolvent. Section 101 of the Bankruptcy Code provides that a municipality is insolvent when its financial condition is such that it is (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due. *Id.* § 101(32)(C). Insolvency is determined based on the debtor's financial condition as of the date the petition is filed. *In re Hamilton Creek Metropolitan Dist.*, 143 F.3d 1381, 1384 (10th Cir. 1998); *In re City of Bridgeport*, 129 B.R. 332, 337 (Bankr. D. Conn. 1991).

As described in detail above, the Debtor is and has been operating at a loss and is unable to consistently pay its debts as they become due. Year to date, for the period September 1, 2013 to March 31, 2014, Debtor's financial reports show a net operating loss of approximately $3,142,178. As of the date the Debtor filed its petition, it is clear the Debtor is unable to "pay its bills as they become due." Thus, the Debtor is insolvent within the meaning of 11 U.S.C. §§ 101(32)(C) and 109(c)(3).

### 4. The Debtor Desires to Effect a Plan to Adjust its Debts.

Section 109(c)(4) requires that a chapter 9 petitioner desire to effect a plan to adjust its debts. As certified by the Debtor in its Statement of Qualifications Under 11 U.S.C. § 109(c), and demonstrated by the pre-petition efforts of the Debtor, the Debtor desires to effect a plan of adjustment with respect to its debts in this case.

### 5. The Negotiation Requirements Under Section 109(c)(5) Are Satisfied.

11 U.S.C. § 109(c)(5) requires that a chapter 9 petitioner demonstrate that it has satisfied or is excused from certain pre-petition negotiation standards with respect to its creditors. *See In re Connector 2000 Ass'n*, 447 B.R. 752; *In re Valley Health Sys.*, 383 B.R. 156, 165 (Bankr.

7

C.D. Cal. 2008). A debtor must satisfy one of the following four options to satisfy Section 109(c)(5):

> (1) The debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan;
>
> (2) The debtor has negotiated in good faith but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan;
>
> (3) The debtor is unable to negotiate with its creditors because such efforts are impracticable; or
>
> (4) The debtor must reasonably believe that a creditor may attempt to obtain a transfer avoidable under § 547..

11 U.S.C. § 109(c)(5). As further discussed below, the Debtor believes is satisfies the third and fourth options.

Prior to the filing of the petition, Debtor reached out to the various creditors that were actively seeking the entry of judgment on debts incurred by the hospital. The creditors involved and the approximate amounts of the debts in issue were as follows:

| Aramark Management Services | $3,286,834 |
| Cardinal Health 200, LLC | 1,241,938 |
| Sweet Dreams Nurse Anesthesia | 591,714 |
| Morrison Management Specialist | 336,352 |
| Sevenex Group | 51,081 |
| Varrow, Inc. | 14,135 |

The Debtor requested in a conference call on May 26, 2014 that these creditors forbear from further action to obtain a final judgment of record and thereby allow the Debtor the opportunity to present and negotiate a plan of debt adjustment outside of chapter 9. None of the participants agreed during the call to forbear but indicated they would consider the request. The participating creditors were cordial and listened to the presentation and requests. However, on June 4, 2014, Morrison Management Specialist proceeded with the filing of a Confession of Judgment against

the Debtor in Spartanburg County without any prior notice to the Debtor or its counsel.[4] During the creditor conference call, the undersigned counsel for Debtor informed the participants that he would advise them if any of the litigants proceeded with taking further action towards the filing or enforcement of judgments. The Debtor owns the real estate on which its operations are located. This property is otherwise unencumbered. Debtor is informed and believes that to the extent any judgments would constitute a lien on the assets of the Debtor, such lien would be an avoidable transfer under § 547. Faced with the imminent threat of the entry of judgments that might encumber the Debtor's operating assets and potentially interfere with the essential public services being performed by the Debtor, the Board voted on the evening of June 5, 2014, to authorize the filing of the Petition.[5]

Based on the foregoing, Debtor submits that the exception to the negotiation requirement under § 109(c)(5)(D) has been satisfied.

Additionally, Section 109(c)(5)(C) excuses a debtor from satisfying a pre-petition negotiation standard if "such negotiation is impracticable." 11 U.S.C. § 109(c)(5)(C). The Debtor submits that it also satisfies this exception.

Negotiating with creditors pre-petition is impracticable within the meaning of 11 U.S.C. § 109(c)(5)(C) if there are a large number of creditors which makes negotiation a plan of adjustment impossible. *See In re County of Orange*, 183 B.R. 594, 608 (Bankr. C.D. Cal. 1995) ("Congress enacted § 109(c)(5)(C) specifically 'to cover situations in which a very large body of

---

[4] Debtor contends that the confession of judgment was filed in violation of the terms of settlement by which it was executed and delivered to Morrison Management Specialist. Debtor has filed a Motion for Relief from Judgment requesting that it be vacated.
[5] Cardinal Health 200, LLC had already obtained a judgment against the Debtor in Ohio and on May 29, 2014 served Debtor via certified mail a Notice of Filing Foreign Judgment. Also, Aramark Management Services Limited Partnership informed Debtor on June 2, 2014, that is intended to proceed with filing its judgment in Pennsylvania unless the Debtor represented by June 5, 2014 that it could make the required payment of $3,286,324.53 on or before June 30, 2014. Debtor determined that it could not make the requested representation or payment.

9

creditors would render prefiling negotiations impracticable'") (citations omitted).

The Debtor has been unable, prior to the filing of its chapter 9 petition to negotiate with its creditors to reach an agreement with the holders of at least a majority in amount of each class to be impaired under a plan of adjustment because such negotiation is impractical given the numerosity of holders of claims in the classes envisioned to be impaired under a plan of reorganization. The majority of the Debtor's approximately 700 creditors are unsecured trade creditors. Due to the fact that negotiations deteriorated with those creditors actively seeking judgments against the Debtor, it became simply impractical for the Debtor to negotiate with the remaining volume of creditors prior to filing its petition. *See Orange County*, 183 B.R. at 607 ("the impracticality requirement may be satisfied based on the sheer number of creditors involved."); *In re Villages at Castle Rock Metro. Dist. No. 4*, 145 B.R. 76, 85 (Bankr. D. Colo. 1990) ("It certainly was impracticable for [debtor] to have included several hundred Series D bondholders in these conceptual discussions.").

Numerosity of creditors is not the only circumstance under which the impracticability requirement might be satisfied. *In re Valley Health Sys.*, 383 B.R. 156, 165 (Bankr. C.D. Ca. 2008). Negotiations may be impractical where it is necessary to file a chapter 9 case to preserve the assets of a municipality, where a delay in filing a petition to negotiate with creditors would put those assets at risk. *See Orange County*, 183 B.R. 594 at 607-08 (negotiation impractical where there was no time to enter into negotiations with its participants due to the threat of liquidation assets); *see also* 2 Collier P 109.04[3][e][iii] at 109-35 ("[W]here it is necessary to file a chapter 9 case to preserve the assets of a municipality, delaying the filing to negotiate with creditors and risking, in the process, the assets of the municipality makes such negotiations impracticable"). As previously discussed, the Debtor attempted to negotiate a standstill

agreement with its creditors that were actively pursuing judgments, which group included some of the Debtor's largest trade creditors, so that efforts could be made to negotiate a plan outside of bankruptcy. However, such efforts proved unsuccessful. Even if the Debtor could negotiate with the majority of its creditors, which the Debtor cannot, the Chapter 9 filing is necessary to protect the Debtor's assets, continue its business operations, and continue providing uninterrupted healthcare services to its patients while simultaneously developing a comprehensive plan for adjustment of debts.

Accordingly, the impracticality standard under Section 109(c)(5)(C) is satisfied.

### III. CONCLUSION

For all the foregoing reasons, the Debtor is eligible to be a debtor under Section 109(c) of the Bankruptcy Code.

**HAYNSWORTH SINKLER BOYD, P.A.**

By:  /s/ Stanley H. McGuffin
     District ID No. 2833
     Louise M. Johnson
     District ID No. 7509

Post Office Drawer 11889
Columbia, South Carolina 29211
(803) 779.3080 Tel
(803) 765.1243 Fax
smcguffin@hsblawfirm.com
cjohnson@hsblawfirm.com

June 6, 2014.                                    Attorneys for Debtor