IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Union Hospital District,<br><br>Debtor. | Case No.<br>Chapter 9<br><br>**DECLARATION OF PAUL R. NEWHOUSE** |

I, the undersigned Paul R. Newhouse, being duly sworn, depose and state on oath as follows:

1. I am the Chief Executive Officer ("CEO") of Union Hospital District ("Debtor"). In my capacity as CEO, I am personally familiar with the operations of the Debtor and its financial condition.

2. Within the corporate umbrella of the Debtor are four distinct areas of services and operations:

    (i)   Wallace Thomson Hospital ("Hospital");

    (ii)  Ellen Sagar Nursing Homes ("Ellen Sagar");

    (iii) Carolinas Health Associates ("Carolinas Health"); and

    (iv)  Union County EMS ("EMS").

3. The Hospital is the general community hospital for Union County, South Carolina and represents the initial entry point for area residents to various levels of the health care system. The Hospital is a public 143-bed acute-care facility. The Hospital offers the normal range of services for a rural community hospital, including medical, surgical, emergency, and OB services. The Hospital is serviced by a staff of 7 primary care physicians, 2 general surgeons, 2 pediatricians, 3 OBGYN practitioners, 1 pathologist, 1 radiologist, 1 anesthesiologist, and 3 hospitalists. Carolinas Health is the network of physicians that are employed by the Debtor EMS

1

is the Union County Emergency Services operations, which is managed by the Debtor pursuant to a management contract with Union County.

4. For financial reporting purposes, the Debtor maintains separate records of income and expenses for each of its four service areas, but also consolidates the financial results into a consolidated financial statement. Attached hereto as Exhibit 1 are the key financial reports for the period ending March 31, 2014, including some comparison information to the preceding fiscal year. For the fiscal period October 1, 2013 to March 31, 2014, the Debtor showed a negative Net Assets of $557,263 and negative Operating Revenues of $3,576,965, on a consolidated basis.

3. Following are the primary officers of the Hospital:

(a) Board of Directors

|   |   |   |
|---|---|---|
| (i) | Rhonda Ingle-Chairman | Voting |
| (ii) | Jeff Cannon | Voting |
| (iii) | Shirley Gist | Voting |
| (iv) | Brent Greet – Vice Chairman | Voting |
| (v) | Bobbie Jean Lawson – Secretary-Treasurer | Voting |
| (vi) | Lynn Lawson | Voting |
| (vii) | Karen Newton | Voting |
| (viii) | M. John Flood, MD | Non-Voting |
| (ix) | Natashia Jeter, MD | Non-Voting |
| (x) | Daniel Crow, MC | Non-Voting |

(b) Operating Officers

Paul Newhouse – Chief Executive Officer

Cindy Gault – Chief Financial Officer

and ordinary course of business unsecured trade debt. For reporting purposes, the Debtor maintains separate records of income and expenses for each of its service areas, but also consolidates the financial results into a consolidated financial statement. Attached hereto as Exhibit 1 are the key financial reports for the period ending March 31, 2014, including some comparison information to the preceding fiscal year. For the fiscal period October 1, 2013 to March 31, 2014, the Debtor showed a negative Net Assets of $557,263 and negative Operating Revenues of $3,576,965, on a consolidated basis.

6. The Debtor has struggled to pay its debts in the ordinary course of business and therefore has accrued significant trade debt that it is currently not able to pay. Moreover, the Debtor is currently the defendant in various civil actions related to the collection of outstanding trade debt in the amount of approximately $5,600,000.00. Debtor does not currently have the ability to pay such obligations and expects judgments to be entered in the cases in favor of one or more of the plaintiffs. On June 4, 2014, Morrison Management Specialist, Inc. proceeded with the filing of a Confession of Judgment against the Debtor in Spartanburg County. Cardinal Health 200, LLC has already obtained a judgment against the Debtor in Ohio and on May 29, 2014 served Debtor via certified mail a Notice of Filing Foreign Judgment. Also, Aramark Management Services Limited Partnership informed Debtor on June 2, 2014, that is intended to proceed with filing a stipulation of judgment in Pennsylvania unless the Debtor represented by June 5, 2014 that it could represent that it could make a payment of $3,286,324.53 on or before June 30, 2014. Debtor determined that it could not make the requested representation or payment.

7. Debtor desires to effectuate a plan of adjustment with its creditors, but has concluded that it currently needs the protection for the Unites States Bankruptcy Court in order for those

that it currently needs the protection for the Unites States Bankruptcy Court in order for those efforts to proceed in an efficient, fair and orderly manner.

      7.    The Debtor does not have any outstanding bonds.

WITNESS my hand this 5th day of June, 2014, at Union, South Carolina.

                                                             Paul R. Newhouse

Sworn to and subscribed before me this 5th day of June 2014.

_LouEllen T Spee_
Notary Public, State of South Carolina
My commission expires Oct 19, 2015.



# Union Hospital District

# FINANCIAL STATEMENTS
# FOR THE MONTH ENDED
# MARCH 31, 2014
# (UNAUDITED)

EXHIBIT 1

# UNION HOSPITAL DISTRICT
# FINANCIAL STATEMENTS INDEX
# FOR THE MONTH ENDED MARCH 31, 2014

                                                                    Page(s)

Financial Report - Union Hospital District

    Financial Highlights                                        1-3

    Comparative Statistical Information                         4

    Key Indicators                                              5

    Comparative Balance Sheets                                  6

    Comparative Statements of Operations                        7

Supplementary Information:

    Combining Divisional Balance Sheets                         8

    Combining Divisional Statements of Operations - Current Month Actual    9

    Combining Divisional Statements of Operations - Year-To-Date Actual    10

# UNION HOSPITAL DISTRICT
## COMPARATIVE STATISTICAL INFORMATION
### FOR THE MONTH AND YEAR-TO-DATE ENDED MARCH 31, 2014

| | CURRENT MONTH | | | | | | YEAR-TO-DATE | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIOR YEAR | ACTUAL | BUDGET | VARIANCE FAVOR (UNFAVOR) | % VARIANCE FAVOR (UNFAVOR) | | PRIOR YEAR | ACTUAL | BUDGET | VARIANCE FAVOR (UNFAVOR) | % VARIANCE FAVOR (UNFAVOR) |
| | | | | | **HOSPITAL STATISTICS** | | | | | |
| | | | | | **DISCHARGES/ DELIVERIES** | | | | | |
| 181 | 161 | 272 | (111) | (41) | Adult & Pediatric | 1,134 | 964 | 1,439 | (475) | (33) |
| 10 | 9 | 11 | (2) | (18) | Newborn Deliveries | 58 | 66 | 47 | 19 | 40 |
| 191 | 170 | 283 | (113) | (40) | Total | 1,192 | 1,030 | 1,486 | (456) | (31) |
| | | | | | **DAYS OF CARE** | | | | | |
| 787 | 520 | 1,082 | (562) | (52) | Adult & Pediatric | 4,962 | 3,981 | 5,738 | (1,757) | (31) |
| 86 | 47 | 50 | (3) | (6) | Observation | 384 | 422 | 290 | 132 | 46 |
| 25 | 19 | 22 | (3) | (14) | Newborn | 139 | 141 | 94 | 47 | 50 |
| 898 | 586 | 1,154 | (568) | (49) | Total | 5,485 | 4,544 | 6,122 | (1,578) | (26) |
| | | | | | **AVERAGE DAILY CENSUS** | | | | | |
| 25.39 | 16.77 | 34.90 | (18.1) | (52) | Adult & Pediatric | 27.26 | 21.87 | 31.53 | (9.7) | (31) |
| 2.77 | 1.52 | 1.61 | (0.1) | (6) | Observations | 2.11 | 2.32 | 1.59 | 0.7 | 46 |
| 0.81 | 0.61 | 0.71 | (0.1) | (14) | Newborn | 0.76 | 0.77 | 0.52 | 0.3 | 50 |
| 28.97 | 18.90 | 37.23 | (18) | (49) | Total | 30.14 | 24.97 | 33.64 | (9) | (26) |
| | | | | | **AVERAGE LENGTH OF STAY** | | | | | |
| 4.16 | 3.34 | 4.00 | 0.7 | 17 | Adult & Pediatric | 4.25 | 4.13 | 4.00 | (0.1) | (3) |
| 1.62 | 1.62 | 1.19 | (0.4) | (36) | Observation | 1.27 | 1.75 | 1.14 | (0.6) | (54) |
| 2.50 | 2.11 | 2.00 | (0.1) | (5) | Newborn | 2.40 | 2.14 | 2.00 | (0.1) | (7) |
| | | | | | **EMERGENCY DEPARTMENT** | | | | | |
| 1,809 | 1,518 | 1,600 | (82) | (5) | Total ED Visits | 10,372 | 9,684 | 9,595 | 89 | 1 |
| 7.9% | 8.0% | 8.0% | (0.0) | (0) | ED Admits as % of Total Visits | 8.5% | 8.0% | 8.0% | 0.0 | 0 |
| 76.3% | 77.6% | 59.0% | 18.6% | 31 | ED Admits as % of Total Admits | 74.7% | 79.7% | 59.0% | 20.7% | 35 |
| | | | | | **SURGICAL SERVICES** | | | | | |
| 32 | 18 | 38 | (20) | (53) | OR -Inpatient Cases | 207 | 145 | 224 | (79) | (35) |
| 42 | 34 | 61 | (27) | (44) | OR -Outpatient Cases | 325 | 183 | 353 | (170) | (48) |
| 26 | 20 | 37 | (17) | (46) | Endoscopy -Inpatient Cases | 156 | 144 | 224 | (80) | (36) |
| 40 | 38 | 43 | (5) | (12) | Endoscopy -Outpatient Cases | 249 | 214 | 259 | (45) | (17) |
| 67 | 53 | 80 | (27) | (34) | Other OR Outpatient Cases | 359 | 305 | 413 | (108) | (26) |
| 207 | 163 | 259 | (96) | (37) | Total | 1,296 | 991 | 1,473 | (482) | (33) |
| | | | | | **OUTPATIENT** | | | | | |
| 1,079 | 690 | 1,390 | (700) | (50) | Outpatient Visits | 6,247 | 4,115 | 8,070 | (3,955) | (49) |
| 442 | 406 | 515 | (109) | (21) | Adjusted Discharges | 2,680 | 2,245 | 2,949 | (704) | (24) |
| 1,920 | 1,311 | 2,053 | (742) | (36) | Adjusted Patient Days | 11,371 | 9,208 | 11,751 | (2,543) | (22) |
| | | | | | **PRODUCTIVITY** | | | | | |
| 231.3 | 244.5 | 230.0 | (14.5) | (6) | Employed FTEs | 230.3 | 239.4 | 230.0 | (9.4) | (4) |
| 8.5 | 6.1 | 8.0 | 1.9 | 23 | Overtime FTEs | 7.9 | 6.6 | 8.0 | 1.4 | 18 |
| 40.4 | 1.7 | 45.6 | 43.9 | 96 | Contract FTEs | 40.7 | 4.8 | 45.6 | 40.8 | 89 |
| 271.7 | 246.2 | 275.6 | 29.4 | 11 | Total Hospital FTEs | 271.0 | 244.2 | 275.6 | 31.4 | 11 |
| 3.7 | 2.5 | 3.5 | 1.0 | 28 | Overtime Utilization % | 3.4 | 2.7 | 3.5 | 0.7 | 21 |
| 4.4 | 5.8 | 4.2 | (1.7) | (40) | FTEs Per Adjusted Occupied Bed | 3.6 | 4.8 | 4.3 | (0.6) | (13) |
| 0.61 | 0.61 | 0.54 | (0.07) | (13) | FTEs Per Adjusted Discharge | 0.51 | 0.65 | 0.56 | (0.09) | (16) |
| 529.4 | 508.9 | 524.0 | 15.1 | 3 | Total Enterprise FTEs (Paid) | 522.60 | 491.00 | 524.00 | 33.0 | 6 |
| 1.0451 | 0.9483 | 1.0100 | (0.0617) | (6) | **HOSPITAL CASE-MIX INDEX** | 1.0249 | 1.0186 | 1.0100 | 0.0086 | 1 |
| | | | | | **HOSPITAL PAYOR MIX** | | | | | |
| 49.3% | 49.6% | 51.8% | 2.2 | 4 | Medicare | 51.8% | 52.7% | 51.8% | (0.9) | (2) |
| 14.9% | 15.5% | 13.7% | (1.8) | (13) | Medicaid | 13.7% | 14.8% | 13.7% | (1.1) | (8) |
| 13.6% | 10.2% | 11.4% | 1.2 | 11 | Blue Cross and Blue Shield | 11.4% | 10.6% | 11.4% | 0.8 | 7 |
| 8.8% | 8.0% | 7.6% | (0.4) | (6) | Managed Care/Commercial | 7.6% | 7.4% | 7.6% | 0.2 | 3 |
| 13.4% | 16.7% | 15.6% | (1.1) | (7) | Self-pay and Other | 15.6% | 14.5% | 15.6% | 1.1 | 7 |
| 100.0% | 100.0% | 100.0% | (0.0) | | Total | 100.0% | 100.0% | 100.0% | 3.0 | |
| | | | | | **LONG TERM CARE** | | | | | |
| 106.0 | 101.2 | 109.8 | (9) | (8) | Average Daily Census | 106.3 | 102.1 | 109.8 | (8) | (7) |
| 105.8 | 104.3 | 108.0 | 4 | 3 | Total FTEs | 102.6 | 101.2 | 108.0 | 7 | 6 |
| | | | | | **EMERGENCY MEDICAL SERVICES** | | | | | |
| 589 | 524 | 535 | (11) | (2) | Total Emergency and Transport Runs | 3,545 | 3,626 | 3,270 | 356 | 11 |
| 37.5 | 37.0 | 36.0 | 1 | 3 | Total FTEs | 36.4 | 37.0 | 36.0 | 1 | 3 |
| | | | | | **PHYSICIAN NETWORKS** | | | | | |
| 5,130 | 4,129 | 5,642 | (1,513) | (27) | Total Provider Visits | 28,813 | 24,506 | 32,235 | (7,729) | (24) |
| 18.0 | 18.0 | 18.0 | 0.0 | 0 | Provider FTEs | 18.0 | 18.0 | 18.0 | 0.0 | 0 |
| 13.6 | 10.9 | 14.9 | (4.0) | (27) | Visits per Day per Provider FTE | 12.6 | 11.1 | 14.1 | (3.0) | (22) |
| 67.8 | 71.3 | 58.6 | 12.7 | 22 | Total Staff FTEs | 63.8 | 59.8 | 58.6 | 1.2 | 2 |

# UNION HOSPITAL DISTRICT
## KEY INDICATORS
### YEAR-TO-DATE ENDED MARCH 31, 2014

| | 2009 S & P "BBB" MEDIAN | ACTUAL | TARGET | VARIANCE FAVOR (UNFAVOR) | % VARIANCE FAVOR (UNFAVOR) |
|---|---|---|---|---|---|
| (1)Operating Margin % | 2.3% | -17.0% | -1.3% | -15.7% | -1207.7% |
| (1)Operating Cash Flow Margin % | 9.5% | -9.5% | 3.3% | -12.8% | -387.8% |
| Total Margin % | 2.3% | -14.6% | 0.0% | -14.6% | 731400.0% |
| Hospital Adjusted Discharge Growth Rate | n/a | -16.0% | 8.0% | -24.0% | -300.0% |
| (1)Days Unrestricted Cash on Hand | 125 | 0.3 | 40 | -40 | -99.2% |
| (1)Unrestricted Cash as % of Long-Term Debt | 88.2% | 0.5% | 84.0% | -83.5% | -99.4% |
| Net Days of Hospital Revenue in Total Hospital Patient Accounts Receivable | 45 | 90 | 50 | -40 | -80.0% |
| Gross Days of Hospital Revenue in DNFB Hospital Patient Accounts Receivable | n/a | 4 | 5 | 1 | 20.0% |
| Net Days of Revenue in Freestanding Long-Term Care Facility Patient Accounts | n/a | 81 | 38 | -43 | -113.2% |
| Net Days of Revenue in EMS Patient Accounts Receivable | n/a | 19 | 17 | -2 | -11.8% |
| Net Days of Revenue in Physician Practices Patient Accounts Receivable | n/a | 23 | 45 | 22 | 48.9% |
| Salaries / Benefits/Contract Labor as % of Total Net Patient Revenue | 49.0% | 72.7% | 66.9% | -5.84% | -8.7% |
| (2)Net Charity Care as % of Gross Patient Revenue | n/a | 3.5% | 1.4% | -2.10% | -150.0% |
| Net Bad Debts as % of Gross Patient Revenue | n/a | 4.7% | 6.9% | 2.22% | 32.2% |
| Net Bad Debts/Charity Care/Uninsured Disc. as % of Gross Patient Revenue | n/a | 10.0% | 10.5% | 0.49% | 4.7% |
| (1)Maximum Annual Debt Service Coverage(x) | 3.0 | (0.4) | 1.5 | -1.9 | -129.3% |
| Capital Expenditures as % of Depreciation and Amortization | 112.6% | 12.0% | 125.0% | -113.00% | -90.4% |

(1)Identified by rating agencies as a key ratio in determining ratings for hospitals and healthcare systems.

(2)Average from 2005 Charity Care Survey by PricewaterhouseCoopers (not an S & P Median).

## UNION HOSPITAL DISTRICT
### COMPARATIVE BALANCE SHEETS
### MARCH 31, 2014 AND SEPTEMBER 30, 2013

| | 3/31/2014 | 9/30/2013 | $ Increase (Decrease) | % Increase (Decrease) |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **CURRENT ASSETS** | | | | |
| Cash and cash equivalents | $24,599 | $328,329 | ($303,730) | -93% |
| Patient accounts receivable - net | 7,239,667 | 8,267,580 | (1,027,913) | -12% |
| Estimated third party receivable | 355,137 | 536,935 | (181,798) | 0% |
| Other accounts receivable | 597,592 | (13,084) | 610,676 | -4667% |
| Inventories | 1,047,695 | 1,032,263 | 15,432 | 1% |
| Prepaid expenses | 353,307 | 270,538 | 82,769 | 31% |
| Total Current Assets | 9,617,997 | 10,422,561 | (804,564) | -8% |
| **PROPERTY, PLANT, AND EQUIPMENT** | 54,855,649 | 54,699,298 | $156,351 | 0% |
| Less accumulated depreciation | (40,637,971) | (39,297,780) | ($1,340,191) | 3% |
| Total Property, Plant and Equipment, Net | 14,217,678 | 15,401,518 | (1,183,840) | -7.7% |
| **OTHER ASSETS** | | | | |
| Assets limited as to use: | | | | |
| Designated as funded depreciation - hospital | 18,220 | 318,360 | (300,140) | -94% |
| Designated as funded depreciation - nursing home | 0 | 0 | 0 | 0% |
| Designated as funded depreciation - EMS | 0 | 0 | 0 | 0% |
| Restricted - Cash Collateral Account (Principal) | 250,196 | 250,159 | 37 | 0% |
| Restricted - Cash Collateral Account (Interest) | 0 | 0 | 0 | 0% |
| Restricted - Funds Held for Others | 0 | 0 | 0 | 0% |
| Other accounts receivable | 0 | 0 | 0 | 0% |
| Bond issue costs - net | 0 | 0 | 0 | 0% |
| Other assets | 0 | 0 | 0 | 0% |
| Total Other Assets | 268,416 | 568,519 | (300,103) | -53% |
| **TOTAL ASSETS** | $24,104,091 | $26,392,598 | ($2,288,507) | -9% |
| **LIABILITIES AND NET ASSETS** | | | | |
| **CURRENT LIABILITIES** | | | | |
| Accounts payable | $8,458,402 | $8,349,935 | $108,467 | 1% |
| Salaries and benefits payable | 1,280,495 | 1,196,826 | 83,669 | 7% |
| Other liabilities and accruals | 4,351,706 | 3,400,415 | 951,291 | 28% |
| Estimated third party reserves | 2,009,141 | 1,659,223 | 349,918 | 21% |
| Current portion of long-term debt | 73,268 | 168,490 | (95,222) | -57% |
| Union County Bonds | 2,875,000 | 2,825,000 | 50,000 | 0% |
| Total Current Liabilities | 19,048,012 | 17,599,889 | 1,448,123 | 8% |
| **LONG TERM LIABILITIES** | | | | |
| LONG TERM DEBT, less current portion | 5,613,701 | 6,207,605 | (593,904) | -10% |
| Deferred revenue | 0 | 0 | 0 | 100% |
| Other long-term liabilities | 0 | 0 | 0 | 0% |
| **TOTAL LIABILITIES** | 24,661,713 | 23,807,494 | 854,219 | 4% |
| **NET ASSETS** | | | | |
| Invested in capital assets, net of debt | 8,996,331 | 8,996,331 | 0 | 0% |
| Unrestricted | (6,411,216) | 2,352,664 | (8,763,880) | -373% |
| Year - to - date results | (3,142,738) | (8,763,891) | 5,621,154 | 64% |
| Donations/transfers/other | 0 | 0 | 0 | 0% |
| Total Net Assets | (557,623) | 2,585,104 | (3,142,727) | -122% |
| **TOTAL LIABILITIES AND NET ASSETS** | $24,104,091 | $26,392,598 | ($2,288,508) | -9% |

UNION HOSPITAL DISTRICT
COMPARATIVE STATEMENTS OF OPERATIONS
FOR THE MONTH AND YEAR-TO-DATE ENDED MARCH 31, 2014

| CURRENT MONTH | | | | | | YEAR-TO-DATE | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIOR YEAR | ACTUAL | BUDGET | $ VARIANCE FAVOR (UNFAVOR) | % VARIANCE FAVOR (UNFAVOR) | | PRIOR YEAR | ACTUAL | BUDGET | $ VARIANCE FAVOR (UNFAVOR) | % VARIANCE FAVOR (UNFAVOR) |
| | | | | | **Gross Patient Revenue** | | | | | |
| $3,784,590 | $2,720,838 | $5,593,423 | ($2,872,585) | (51) | Inpatient | $23,166,201 | $20,759,275 | $29,073,911 | ($8,314,635) | (29) |
| 2,503,304 | 2,015,197 | 1,920,000 | 95,197 | 5 | Emergency | 13,964,388 | 13,443,871 | 11,685,000 | 1,758,871 | 15 |
| 412,141 | 221,153 | 355,000 | (133,847) | (38) | Observation | 2,130,469 | 2,047,735 | 2,039,500 | 8,235 | 0 |
| 2,474,961 | 1,904,914 | 2,745,250 | (840,336) | (31) | Outpatient | 15,155,321 | 11,729,209 | 16,444,500 | (4,715,291) | (29) |
| 569,688 | 611,006 | 674,396 | (63,390) | (9) | Skilled Nursing/Long-term Care | 3,378,074 | 3,616,867 | 4,008,749 | (391,882) | (10) |
| 318,102 | 262,379 | 287,830 | (25,451) | (9) | EMS | 1,895,656 | 1,892,758 | 1,759,260 | 133,498 | 8 |
| 955,306 | 741,350 | 1,348,438 | (607,088) | (45) | Physician Offices | 6,138,466 | 4,712,030 | 7,704,165 | (2,992,136) | (39) |
| 11,018,092 | 8,476,837 | 12,924,337 | (4,447,500) | (34) | Total Patient Revenue | 65,828,575 | 58,201,745 | 72,715,085 | (14,513,340) | (20) |
| | | | | | **Revenue Deductions** | | | | | |
| 3,420,260 | 2,945,631 | 4,241,962 | 1,296,331 | 31 | Medicare | 20,784,845 | 21,341,586 | 23,717,446 | 2,375,860 | 10 |
| 784,951 | 1,396,947 | 1,092,428 | (304,519) | (28) | Medicaid | 6,545,244 | 6,173,750 | 6,082,577 | (91,173) | (1) |
| 731,878 | 539,735 | 823,813 | 284,079 | 34 | Managed Care/Commercial | 4,590,746 | 3,720,664 | 4,544,952 | 824,288 | 18 |
| 204,404 | 365,929 | 191,046 | (174,883) | (92) | Charity Care | 1,939,027 | 2,034,200 | 1,057,013 | (977,186) | (92) |
| 942,727 | 1,001,316 | 1,089,646 | 88,329 | 8 | Other | 6,173,979 | 5,177,789 | 6,361,806 | 1,184,017 | 19 |
| 1,228,080 | -757,671 | 889,100 | 1,646,771 | 185 | Provision for Uncollectibles-Net | 4,527,732 | 2,633,575 | 5,003,860 | 2,370,285 | 47 |
| 7,312,299 | 5,491,887 | 8,327,995 | 2,836,108 | 34 | Total Revenue Deductions | 44,561,574 | 41,081,564 | 46,767,654 | 5,686,090 | 12 |
| 3,705,793 | 2,984,950 | 4,596,342 | (1,611,392) | (35) | **Net Patient Revenue** | 21,267,001 | 17,120,181 | 25,947,431 | (8,827,250) | (34) |
| 335,061 | 927,108 | 179,708 | 747,400 | 416 | Other Operating Revenue | 3,251,716 | 3,925,643 | 1,078,253 | 2,847,390 | 264 |
| 4,040,854 | 3,912,058 | 4,776,050 | (863,992) | (18) | **Net Operating Revenue** | 24,518,717 | 21,045,823 | 27,025,684 | (5,979,861) | (22) |
| | | | | | **Operating Expense** | | | | | |
| 2,057,803 | 1,920,720 | 2,136,948 | 216,227 | 10 | Salaries & Wages | 11,668,408 | 11,125,610 | 12,281,577 | 1,155,967 | 9 |
| 473,939 | 579,117 | 554,480 | (24,637) | (4) | Fringe Benefits | 3,025,226 | 3,591,520 | 3,177,654 | (413,866) | (13) |
| 435,802 | 59,217 | 331,312 | 272,095 | 82 | Contract Labor | 2,487,706 | 591,878 | 1,893,532 | 1,301,654 | 69 |
| 197,056 | 357,333 | 200,233 | (157,100) | (78) | Professional Fees | 1,447,966 | 1,872,938 | 1,266,801 | (606,137) | (48) |
| 264,811 | 272,533 | 367,390 | 94,857 | 26 | Purchased Services | 1,723,147 | 1,554,929 | 2,062,956 | 508,027 | 25 |
| 118,419 | 47,771 | 74,615 | 26,844 | 36 | Insurance | 473,241 | 279,656 | 419,959 | 140,304 | 33 |
| 106,565 | 110,366 | 123,226 | 12,860 | 10 | Utilities | 674,438 | 674,507 | 682,024 | 7,517 | 1 |
| 284,214 | 349,472 | 548,355 | 198,883 | 36 | Supplies | 2,421,350 | 2,304,128 | 3,151,304 | 847,175 | 27 |
| 181,222 | 169,562 | 201,450 | 31,887 | 16 | Other | 1,207,369 | 1,043,389 | 1,199,559 | 156,170 | 13 |
| 43,184 | 47,809 | 7,900 | (39,909) | (505) | Interest | 367,045 | 243,941 | 47,400 | (196,541) | (415) |
| 219,444 | 219,921 | 199,028 | (20,893) | (10) | Depreciation/Amortization | 1,327,858 | 1,340,192 | 1,194,168 | (146,025) | (12) |
| 4,382,459 | 4,133,822 | 4,744,937 | 611,115 | 13 | Total Operating Expense | 26,823,753 | 24,622,689 | 27,376,932 | 2,754,243 | 10 |
| (341,605) | (221,764) | 31,113 | (252,878) | (813) | **INCOME FROM OPERATIONS** | (2,305,036) | (3,576,865) | (351,248) | (3,225,618) | (918) |
| -8.45% | -5.67% | 0.65% | -6.32% | (970) | Operating Margin % | -9.40% | -17.00% | -1.30% | -15.70% | (1,208) |
| -1.95% | 1.17% | 4.98% | -3.81% | (76) | Operating Cash Flow % | -2.49% | -9.47% | 3.29% | -12.76% | (387) |
| | | | | | **Non-Operating Rev (Exp)** | | | | | |
| 54 | 94 | 80 | 14 | 17 | Interest and Dividend Income | 728 | 311 | 480 | (169) | (35) |
| | | | | | Net Inc (Dec) in Fair Value of Investments: | | | | | |
| 0 | 0 | 0 | 0 | | Realized Gains (Losses) | 0 | 0 | 0 | 0 | |
| -15 | (14) | 0 | (14) | 0 | Unrealized Gains (Losses) | 238 | (93) | 0 | (93) | 0 |
| 39 | 80 | 80 | (1) | (1) | Subtotal | 966 | 218 | 480 | (262) | (55) |
| 0 | 0 | 5,833 | (5,833) | 0 | Donations | 1,187 | 133,909 | 35,000 | 98,909 | 0 |
| 51,750 | 50,000 | 51,750 | (1,750) | (3) | Other | 310,500 | 300,000 | 310,500 | (10,500) | (3) |
| 51,789 | 50,080 | 57,663 | (7,584) | (13) | **Total Non-Operating Rev (Exp)** | 312,653 | 434,127 | 345,980 | 88,147 | 25 |
| ($289,816) | ($171,685) | $88,777 | (260,462) | (293) | **Excess Revenue Over Expense** | ($1,992,383) | ($3,142,738) | ($5,268) | (3,137,471) | 59,562 |
| -7.08% | -4.33% | 1.84% | -6.17% | -335.93% | Total Margin % | -8.02% | -14.63% | -0.02% | -14.61% | 75926.44% |

-7-

## UNION HOSPITAL DISTRICT
### COMBINING DIVISIONAL BALANCE SHEETS
### MARCH 31, 2014

| | Wallace Thomson Hospital | Ellen Sagar Nursing Home | Union County EMS | Carolinas Health Associates | Subtotal | Inter-Divisional Eliminations | Total |
|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | |
| **CURRENT ASSETS** | | | | | | | |
| Cash and cash equivalents | -$360,913 | $308,629 | $75,098 | $1,785 | $24,599 | $0 | $24,599 |
| Patient accounts receivable - net | 5,485,319 | 1,391,229 | 85,463 | 277,656 | 7,239,667 | 0 | 7,239,667 |
| Estimated third party receivable | 0 | 355,137 | 0 | 0 | 355,137 | 0 | 355,137 |
| Interdivisional due from | 13,590,732 | 3,501,245 | 606,589 | 0 | 17,698,566 | (17,698,566) | 0 |
| Other accounts receivable | 567,592 | 0 | 30,000 | 0 | 597,592 | 0 | 597,592 |
| Inventories | 1,040,693 | 7,002 | 0 | 0 | 1,047,695 | 0 | 1,047,695 |
| Prepaid expenses | 293,671 | 36,858 | 12,239 | 10,539 | 353,307 | 0 | 353,307 |
| Total Current Assets | 20,617,094 | 5,600,100 | 809,389 | 289,980 | 27,316,563 | (17,698,566) | 9,617,997 |
| **PROPERTY, PLANT, AND EQUIPMENT** | 47,339,005 | 5,166,302 | 1,577,136 | 773,206 | 54,855,649 | 0 | 54,855,649 |
| Less accumulated depreciation | (35,320,528) | (3,548,365) | (1,404,728) | (364,350) | (40,637,971) | 0 | (40,637,971) |
| Total Property, Plant and Equipment, Net | 12,018,477 | 1,617,937 | 172,408 | 408,856 | 14,217,678 | 0 | 14,217,678 |
| **OTHER ASSETS** | | | | | | | |
| Assets limited as to use: | | | | | | | |
| Designated as funded depreciation - hospital | 18,220 | 0 | 0 | 0 | 18,220 | 0 | 18,220 |
| Designated as funded depreciation - nursing home | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Designated as funded depreciation - EMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Restricted - Cash Collateral Account (Principal) | 250,196 | 0 | 0 | 0 | 250,196 | 0 | 250,196 |
| Restricted - Cash Collateral Account (Interest) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Restricted - Funds Held for Others | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other accounts receivable | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bond issue costs - net | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other assets | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Other Assets | 268,416 | 0 | 0 | 0 | 268,416 | 0 | 268,416 |
| **TOTAL ASSETS** | $32,903,987 | $7,218,037 | $981,797 | $698,836 | $41,802,657 | ($17,698,566) | $24,104,091 |
| **LIABILITIES AND NET ASSETS** | | | | | | | |
| **CURRENT LIABILITIES** | | | | | | | |
| Accounts payable | $8,457,762 | ($1,625) | $2,265 | $0 | $8,458,402 | $0 | $8,458,402 |
| Salaries and benefits payable | 1,024,649 | 136,696 | 0 | 119,150 | 1,280,495 | 0 | 1,280,495 |
| Other liabilities and accruals | 3,309,830 | 564,273 | 163,413 | 314,190 | 4,351,706 | 0 | 4,351,706 |
| Interdivisional due to | 0 | 0 | 0 | 17,698,566 | 17,698,566 | (17,698,566) | 0 |
| Estimated third party reserves | 1,586,852 | 422,289 | 0 | 0 | 2,009,141 | 0 | 2,009,141 |
| Current portion of long-term debt | 73,268 | 0 | 0 | 0 | 73,268 | 0 | 73,268 |
| Union County Bonds | 2,875,000 | 0 | 0 | 0 | 2,875,000 | 0 | 2,875,000 |
| Total Current Liabilities | 17,327,361 | 1,121,633 | 165,678 | 18,131,906 | 36,746,578 | (17,698,566) | 19,048,012 |
| **LONG TERM LIABILITIES** | | | | | | | |
| LONG TERM DEBT, less current portion | 5,560,622 | 0 | 53,079 | 0 | 5,613,701 | 0 | 5,613,701 |
| Deferred revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other long-term liabilities | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL LIABILITIES** | 22,887,983 | 1,121,633 | 218,757 | 18,131,906 | 42,360,279 | (17,698,566) | 24,661,713 |
| **NET ASSETS** | | | | | | | |
| Invested in capital assets, net of debt | 6,530,855 | 1,978,779 | 486,697 | 0 | 8,996,331 | 0 | 8,996,331 |
| Unrestricted | 3,565,408 | 4,754,309 | 723,835 | (15,454,768) | (6,411,216) | 0 | (6,411,216) |
| Year - to - date results | (1,663,259) | 363,316 | 135,508 | (1,978,302) | (3,142,738) | 0 | (3,142,738) |
| Donations/transfers/other | 1,583,000 | (1,000,000) | (583,000) | 0 | 0 | 0 | 0 |
| Total Net Assets | 10,016,004 | 6,096,404 | 763,040 | (17,433,070) | (557,623) | 0 | (557,623) |
| **TOTAL LIABILITIES AND NET ASSETS** | $32,903,987 | $7,218,037 | $981,797 | $698,836 | $41,802,657 | ($17,698,566) | $24,104,091 |

## UNION HOSPITAL DISTRICT
### COMBINING DIVISIONAL STATEMENTS OF OPERATIONS - ACTUAL
### FOR THE MONTH ENDED MARCH 31, 2014

| | CURRENT MONTH ACTUAL | | | | | | |
|---|---|---|---|---|---|---|---|
| | Wallace Thomson Hospital | Ellen Sagar Nursing Home | Union County EMS | Carolinas Health Associates | Subtotal | Inter-Divisional Eliminations | Total |
| **Gross Patient Revenue** | | | | | | | |
| Inpatient | $2,720,838 | $0 | $0 | $0 | $2,720,838 | $0 | $2,720,838 |
| Emergency | 2,015,197 | 0 | 0 | 0 | 2,015,197 | 0 | $2,015,197 |
| Observation | 221,153 | 0 | 0 | 0 | 221,153 | 0 | $221,153 |
| Outpatient | 1,904,914 | 0 | 0 | 0 | 1,904,914 | 0 | $1,904,914 |
| Long-term Care | 0 | 611,006 | 0 | 0 | 611,006 | 0 | $611,006 |
| EMS | 0 | 0 | 262,379 | 0 | 262,379 | 0 | $262,379 |
| Physician Offices | 0 | 0 | 0 | 741,350 | 741,350 | 0 | $741,350 |
| Total Patient Revenue | 6,862,102 | 611,006 | 262,379 | 741,350 | 8,476,837 | 0 | $8,476,837 |
| **Revenue Deductions** | | | | | | | |
| Medicare | 2,872,540 | 4,919 | 68,172 | 0 | 2,945,631 | 0 | $2,945,631 |
| Medicaid | 1,347,703 | 26,860 | 22,384 | 0 | 1,396,947 | 0 | $1,396,947 |
| Managed Care/Commercial | 536,101 | 0 | 3,634 | 0 | 539,735 | 0 | $539,735 |
| Charity Care | 365,929 | 0 | 0 | 0 | 365,929 | 0 | $365,929 |
| Other | 519,578 | 0 | 256 | 481,482 | 1,001,316 | 0 | $1,001,316 |
| Provision for Uncollectibles-Net | (503,866) | 38,739 | 36,938 | (329,482) | (757,671) | 0 | ($757,671) |
| Total Revenue Deductions | 5,137,985 | 70,518 | 131,384 | 152,000 | 5,491,887 | 0 | $5,491,887 |
| **Net Patient Revenue** | 1,724,117 | 540,488 | 130,995 | 589,350 | 2,984,950 | 0 | $2,984,950 |
| Other Operating Revenue | 806,470 | 120,638 | 0 | 0 | 927,108 | 0 | $927,108 |
| Net Operating Revenue | 2,530,587 | 661,126 | 130,995 | 589,350 | 3,912,058 | 0 | $3,912,058 |
| **Operating Expense** | | | | | | | |
| Salaries & Wages | 1,101,318 | 272,151 | 99,274 | 447,977 | 1,920,720 | 0 | $1,920,720 |
| Fringe Benefits | 464,762 | 62,924 | 9,840 | 41,591 | 579,117 | 0 | $579,117 |
| Contract Labor | 43,518 | 13,100 | 2,599 | 0 | 59,217 | 0 | $59,217 |
| Professional Fees | 150,909 | 62,377 | 12,777 | 131,270 | 357,333 | 0 | $357,333 |
| Purchased Services | 214,086 | 18,902 | 27,710 | 11,835 | 272,533 | 0 | $272,533 |
| Insurance | 25,936 | 6,834 | 3,116 | 11,885 | 47,771 | 0 | $47,771 |
| Utilities | 75,062 | 15,961 | 9,796 | 9,547 | 110,366 | 0 | $110,366 |
| Supplies | 269,518 | 63,294 | 3,538 | 13,122 | 349,472 | 0 | $349,472 |
| Other | 98,189 | 54,981 | 1,726 | 14,666 | 169,562 | 0 | $169,562 |
| Interest | 47,809 | 0 | 0 | 0 | 47,809 | 0 | $47,809 |
| Depreciation/Amortization | 193,242 | 11,802 | 6,778 | 8,099 | 219,921 | 0 | $219,921 |
| Total Operating Expense | 2,684,350 | 582,326 | 177,154 | 689,993 | 4,133,822 | 0 | $4,133,822 |
| **INCOME FROM OPERATIONS** | (153,763) | 78,800 | (46,159) | (100,643) | (221,764) | 0 | ($221,764) |
| Operating Margin % | -6.08% | 11.92% | -35.24% | -17.08% | -5.67% | 0.00% | -5.67% |
| Operating Cash Flow % | 3.45% | 13.70% | -30.06% | -15.70% | 1.17% | 0.00% | 1.17% |
| **Non-Operating Rev (Exp)** | | | | | | | |
| Interest and Dividend Income | 94 | 0 | 0 | 0 | 94 | 0 | 94 |
| Net Inc (Dec) in Fair Value of Investments: | | | | | | | |
| Realized Gains (Losses) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Unrealized Gains (Losses) | (14) | 0 | 0 | 0 | (14) | 0 | (14) |
| Subtotal | 80 | 0 | 0 | 0 | 80 | 0 | 80 |
| Donations | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 50,000 | 0 | 50,000 | 0 | 50,000 |
| Total Non-Operating Rev (Exp) | 80 | 0 | 50,000 | 0 | 50,080 | 0 | 50,080 |
| **Excess Revenue Over Expense** | (153,683) | 78,800 | 3,841 | (100,643) | (171,685) | 0 | (171,685) |
| Total Margin % | -6.07% | 11.92% | 2.12% | -17.08% | -4.33% | 0.00% | -4.33% |

## UNION HOSPITAL DISTRICT
### COMBINING DIVISIONAL STATEMENTS OF OPERATIONS - ACTUAL
### FOR THE YEAR-TO-DATE ENDED MARCH 31, 2014

| | YEAR-TO-DATE ACTUAL | | | | | | |
|---|---|---|---|---|---|---|---|
| | Wallace Thomson Hospital | Ellen Sagar Nursing Home | Union County EMS | Carolinas Health Associates | Subtotal | Inter-Divisional Eliminations | Total |
| **Gross Patient Revenue** | | | | | | | |
| Inpatient | $20,759,275 | $0 | $0 | - | $20,759,275 | $0 | $20,759,275 |
| Emergency | 13,443,871 | 0 | 0 | 0 | 13,443,871 | 0 | $13,443,871 |
| Observation | 2,047,735 | 0 | 0 | 0 | 2,047,735 | 0 | $2,047,735 |
| Outpatient | 11,729,209 | 0 | 0 | 0 | 11,729,209 | 0 | $11,729,209 |
| Long-term Care | 0 | 3,616,867 | 0 | 0 | 3,616,867 | 0 | $3,616,867 |
| EMS | 0 | 0 | 1,892,758 | 0 | 1,892,758 | 0 | $1,892,758 |
| Physician Offices | 0 | 0 | 0 | 4,712,030 | 4,712,030 | 0 | $4,712,030 |
| Total Patient Revenue | 47,980,090 | 3,616,867 | 1,892,758 | 4,712,030 | 58,201,745 | 0 | $58,201,745 |
| **Revenue Deductions** | | | | | | | |
| Medicare | 20,837,652 | 39,839 | 464,095 | 0 | 21,341,586 | 0 | $21,341,586 |
| Medicaid | 5,879,373 | 171,530 | 122,847 | 0 | 6,173,750 | 0 | $6,173,750 |
| Managed Care/Commercial | 3,675,937 | 0 | 44,727 | 0 | 3,720,664 | 0 | $3,720,664 |
| Charity Care | 2,034,200 | 0 | 0 | 0 | 2,034,200 | 0 | $2,034,200 |
| Other | 2,710,948 | 0 | 5,464 | 2,461,377 | 5,177,789 | 0 | $5,177,789 |
| Provision for Uncollectibles-Net | 1,713,027 | 289,133 | 452,224 | 179,191 | 2,633,575 | 0 | $2,633,575 |
| Total Revenue Deductions | 36,851,137 | 500,502 | 1,089,357 | 2,640,568 | 41,081,564 | 0 | $41,081,564 |
| **Net Patient Revenue** | 11,128,954 | 3,116,365 | 803,401 | 2,071,461 | 17,120,181 | 0 | $17,120,181 |
| Other Operating Revenue | 3,181,487 | 720,015 | 3,190 | 20,951 | 3,925,643 | 0 | $3,925,643 |
| Net Operating Revenue | 14,310,440 | 3,836,380 | 806,591 | 2,092,412 | 21,045,823 | 0 | $21,045,823 |
| **Operating Expense** | | | | | | | |
| Salaries & Wages | 6,379,994 | 1,587,647 | 597,742 | 2,560,228 | 11,125,610 | 0 | $11,125,610 |
| Fringe Benefits | 2,722,137 | 419,288 | 141,779 | 308,317 | 3,591,520 | 0 | $3,591,520 |
| Contract Labor | 470,116 | 102,197 | 15,594 | 3,971 | 591,878 | 0 | $591,878 |
| Professional Fees | 810,383 | 340,536 | 85,341 | 636,678 | 1,872,938 | 0 | $1,872,938 |
| Purchased Services | 1,170,832 | 126,733 | 83,275 | 174,089 | 1,554,929 | 0 | $1,554,929 |
| Insurance | 147,684 | 36,403 | 18,525 | 77,043 | 279,656 | 0 | $279,656 |
| Utilities | 462,201 | 94,135 | 64,677 | 53,495 | 674,507 | 0 | $674,507 |
| Supplies | 1,747,313 | 396,557 | 31,382 | 128,877 | 2,304,128 | 0 | $2,304,128 |
| Other | 666,032 | 300,773 | 3,754 | 72,829 | 1,043,389 | 0 | $1,043,389 |
| Interest | 243,922 | 19 | 0 | 0 | 243,941 | 0 | $243,941 |
| Depreciation/Amortization | 1,157,197 | 68,794 | 59,014 | 55,188 | 1,340,192 | 0 | $1,340,192 |
| Total Operating Expense | 15,977,811 | 3,473,080 | 1,101,083 | 4,070,714 | 24,622,689 | 0 | $24,622,689 |
| **INCOME FROM OPERATIONS** | (1,667,370) | 363,300 | (294,492) | (1,978,302) | (3,576,865) | 0 | ($3,576,865) |
| Operating Margin % | -11.65% | 9.47% | -36.51% | -94.55% | -17.00% | 0.00% | -17.00% |
| Operating Cash Flow % | -1.86% | 11.26% | -29.19% | -91.91% | -9.47% | 0.00% | -9.47% |
| **Non-Operating Rev (Exp)** | | | | | | | |
| Interest and Dividend Income | 295 | 16 | 0 | 0 | 311 | 0 | $311 |
| Net Inc (Dec) in Fair Value of Investments: | | | | | | | $0 |
| Realized Gains (Losses) | 0 | 0 | 0 | 0 | 0 | 0 | $0 |
| Unrealized Gains (Losses) | (93) | 0 | 0 | 0 | (93) | 0 | ($93) |
| Subtotal | 202 | 16 | 0 | 0 | 218 | 0 | $218 |
| Donations | 3,909 | 0 | 130,000 | 0 | 133,909 | 0 | $133,909 |
| Other | 0 | 0 | 300,000 | 0 | 300,000 | 0 | $300,000 |
| Total Non-Operating Rev (Exp) | 4,111 | 16 | 430,000 | 0 | 434,127 | 0 | $434,127 |
| **Excess Revenue Over Expense** | (1,663,259) | 363,316 | 135,508 | (1,978,302) | (3,142,738) | 0 | (3,142,738) |
| Total Margin % | -11.62% | 9.47% | 10.96% | -94.55% | -14.63% | 0.00% | -14.63% |

2520 STATUTES AT LARGE [No. 847

in the Union-Daily Times, a County Newspaper. Such notice shall state the question to be voted upon, shall state the time and place or places at which said election shall be held. Said Trustees shall likewise appoint the managers of such election, receive the return and determine the result.

**SECTION 3: Ballots—voting.**—The School Trustees of Kelly-Pinckney School District No. 18 shall have printed and provided for the use of the voters a sufficient number of ballots which shall be placed at the voting place or places with the following words plainly printed thereon:

"For the issuance of School Bonds
Against the issuance of School Bonds.

(Those voting in favor of such bonds will strike out the words 'against the issuance of School. Bonds' and those voting against the issuance of such bonds will strike out the words 'for the issuance of School bonds')".

**SECTION 4: Issue bonds if election favorable—maturities—sale—interest.**—If a majority of the votes cast at said election shall be in favor of issuing said bonds, the School Trustees shall issue said bonds as coupon bonds, the first of which shall mature during the year 1947 and the last during the year 1976 —, the amount to mature in any one year shall be in the discretion of and determined by the School Trustees, Said bonds shall be sold at public or private sale at not less than par and accrued interest, and the proceeds therefrom shall be used for the purposes mentioned in Section 1 hereof; PROVIDED, That said bonds so sold shall not bear a rate of interest in excess of four (4%) per centum, payable semi-annually, and the principal and interest thereof shall be payable at such time and places as said School Trustees may prescribe.

**SECTION 5: Bonds—execution.**—That said School bonds shall be signed by the Chairman of the Board of School Trustees and countersigned by the Secretary; PROVIDED, That the signature of the Chairman and the Secretary may be lithographed or engraved upon the attached coupon to such bonds, and such lithographed or engraved signatures shall be sufficient signing thereof.

**SECTION 6: Bonds exempt from taxes.**—That said bonds when issued shall be exempt from taxation for State, and County purposes.

---

No. 848] OF SOUTH CAROLINA 2521

**SECTION 7: Payment of bonds.**—That the officers of Union County charged with the assessment and collection of taxes shall, at the direction of the School Trustees of Kelly-Pinckney School District No. 18, levy and collect such tax annually upon all property, real or personal, within Kelly-Pinckney School District No. 18, as will raise a sum sufficient to pay the interest and principal on said bonds, as the same shall become due.

**SECTION 8: Repeal.**—All Acts or parts of Acts inconsistent herewith are hereby repealed.

**SECTION 9: Time effective.**—This Act shall become effective immediately upon its approval by the Governor.

Approved the 28th day of March 1946

---

No. 848

(R586, H1029, S898)

**AN ACT To Create And Establish A Hospital District For Union County To Be Known As Union Hospital District; To Prescribe Its Duties And Define Its Powers And Authority; To Authorize And Empower The Trustees Of Union Hospital District To Order And Hold An Election For The Purpose Of Issuing Coupon Bonds For Hospital Purposes; To Provide For The Construction, Maintenance And Establishment Of A Public Hospital For Union Hospital District; And To Protect And Promote The Public Health.**

BE IT ENACTED by the General Assembly of the State of South Carolina:

**SECTION 1: Union hospital district, Union County.**—That there be, and there is hereby, created and established in Union County a district to be known as "Union Hospital District", with such duties, powers and authority as herein provided and conferred and which shall be a body politic and corporate, and shall be subject to the rules, regulations and provisions hereinafter contained, and shall include and be comprised of all the territory in Union County within the boundaries of Union County.

**SECTION 2: Board of trustees—treasurer.**—The Union Hospital District shall be governed by a Board composed of seven (7) members, which shall be known as the Union Hospital District Board

EXHIBIT 2

## 2522 STATUTES AT LARGE [No. 848

of Trustees. Three (3) of the members of said Board of Trustees shall be medical doctors and practicing physicians within the Union Hospital District and Four (4) of the members of said Board of Trustees shall be resident citizens within the Union Hospital District. The members of the Union Hospital District Board of Trustees shall be appointed by the Governor upon the recommendation of the Union County Legislative Delegation of the General Assembly of the State of South Carolina, or, of a majority thereof. The initial term of office of the first trustee shall be designated for a period of one (1) year; of the second trustee, for a period of two (2) years; of the third trustee, for a period of three (3) years; of the fourth trustee, for a period of four (4) years; of the fifth trustee, for a period of five (5) years; of the sixth trustee, for a period of six (6) years; and of the seventh trustee, for a period of seven (7) years; and thereafter the term of office of the successor of each initial appointee shall be for a period of seven (7) years. Any vacancy occurring in the office of trustee by death, resignation or otherwise shall be filled in like manner by appointment for the unexpired term. Upon appointment the members of the Union Hospital District Board of Trustees shall qualify by taking the oath required of other officers of the State, and organize as the Union Hospital District Board of Trustees by the election of one of their members as chairman and one as secretary, and by the election of such other officers as they may deem necessary, but no bonds shall be required of them. The treasurer of Union County shall be the treasurer of the Union Hospital District Board of Trustees. He shall receive and pay out all moneys under the control of said board as directed by it, but shall receive no compensation for his services, and no trustee shall receive compensation for his services, but he may receive reimbursement for any cash expenditures actually made for personal expenses incurred as such trustee. The Union Hospital District Board of Trustees shall adopt an official seal and they shall procure office quarters within the Union Hospital District where all formal meetings shall be held, and all records kept.

**SECTION 3: Establish, equip and operate hospital.**—The Union Hospital District Board of Trustees shall have power to build, construct, establish, extend, maintain and operate a public hospital in the Union Hospital district for the accommodation and benefit of the public subject to the rules and regulations of the Union Hospital District Board of Trustees and the provisions of this Act; to purchase, lease and hold real estate, easements, water rights and property rights rea-

## No. 848] OF SOUTH CAROLINA 2523

sonably necessary in their judgment for carrying out the purposes of this Act; to purchase or lease or acquire by gift or otherwise existing hospitals or hospital equipment and to make all lawful contracts reasonably promotive of achieving the principal purposes of this Act so that the Union Hospital District may be adequately served by a public hospital.

**SECTION 4: Hospital site.**—The Union Hospital District Board of Trustees shall have power to locate and acquire the site of the public hospital in Union Hospital District.

**SECTION 5: Conduct of hospital—meetings—buildings.**—The Union Hospital District Board of Trustees shall adopt and promulgate such rules, regulations and by-laws for the government of the public hospital as may be deemed expedient for the economic and equitable conduct thereof. They shall have control of the expenditure of all moneys collected to the credit of the public hospital, the construction of any building or buildings, and the care of the grounds, rooms and buildings purchased. They shall also have the power to appoint a Superintendent, and Assistant Superintendent, and Matron, and fix their compensation, and do all things necessary to carry out the spirit of interest for the establishment and maintenance of said public hospital. They shall hold meetings at least once each month, and shall keep a complete record of all proceedings, and no hospital building shall be erected or constructed until plans and specifications have been made therefor and adopted by the Union Hospital District Board of Trustees, and bids advertised for according to the law and custom of other public buildings.

**SECTION 6: Gifts.**—Any person, firm or corporation or association desiring to make donations of money, personal property, or real estate for the benefit of such public hospital shall have the right to vest title of the property so donated to the Union Hospital District, to be controlled when accepted by the Union Hospital District Board of Trustees according to the terms of the deed or gifts.

**SECTION 7: Patients—payment for services.**—The public hospital established under the provisions of this Act shall be for the benefit of the inhabitants of the Union Hospital District, and any person falling sick, or being injured or maimed within its limit; but every person who is financially able, shall pay to the Union Hospital District Board of Trustees or such officers as it shall designated for

Case 14-03299-dd    Doc 4    Filed 06/06/14    Entered 06/06/14 10:03:04    Desc Main Document    Page 16 of 18

such public hospital such reasonable compensation as he or she is able to pay for occupying, nursing, caring for an maintaining patients according to the rules and regulations of the Union Hospital District Board of Trustees.

**SECTION 8: Municipal and county jurisdictions — doctors — nurses — patients.**—The jurisdiction of the city or town in or near which the public hospital is located, and the jurisdiction of Union County, shall extend over all the land used for the public hospital outside the incorporate limits, and all ordinances of such city or town shall be in full force and effect in and over the territory occupied by such public hospital. In the management of such public hospital no discrimination shall be made against any practitioner of any school of medicine recognized by the laws of South Carolina, and all such legal practitioners have the privilege of treating patients in such hospital, and the Union Hospital District Board of Trustees may establish and maintain in connection therewith as a part of the said public hospital a training school for nurses and a nurses' home and quarters for the accommodation and convenience of nurses. In order to render the public hospital of greates use to the greatest number, the Union Hospital District Board of Trustees may exclude from the use of such public hospital any such persons who shall willfully violate such rules and regulations made by the board of trustees; and the board may extend the privileges and use of such public hospital to persons residing outside the Union Hospital District upon terms and conditions as may be prescribed from time to time by its rules and regulations.

**SECTION 9: Condemn property.**—The Union Hospital District Board of Trustees shall have the power to condemn for the purposes of this Act, lands, easements, water rights and property rights in all cases where any of these things are reasonably required for carrying out this Act, and cannot be obtained by contract from the owner or owners, which the Union Hospital District Board of Trustees is willing to make; the right of condemnation to be exercised in the same manner as prescribed for the condemnation of rights-of-way by counties under Section 5813, Vol. III, Code of Laws of South Carolina, 1942, and Acts amendatory thereof.

**SECTION 10: Issue bonds of election thereon favorable.**—That the Union Hospital District Board of Trustees of Union Hospital District, County of Union and State of South Carolina, be, and they

are hereby, authorized and empowered to issue and sell Coupon Bonds of said Union Hospital District in the sum of not exceeding Five Hundred Thousand ($500,000.00) Dollars, or so much thereof as they may deem necessary for the purpose of acquiring property, erecting or enlarging building or buildings and purchasing equipment for the construction, establishment and maintenance of a public hospital and appurtenances in Union Hospital District, or for paying any indebtedness incurred for said purposes; PROVIDED, that a majority of the voters of said Union Hospital District voting thereon at an election as hereafter provided shall vote in favor of issuing said hospital bonds.

**SECTION 11: Bond election.**—That for the purpose of determining whether or not hospital bonds shall be issued, as provided in Section 10, the Union Hospital District Board of Trustees of Union Hospital District shall order an election to be held at such place or places in said Union Hospital District as may be designated, in which election only qualified electors residing in the Union Hospital District shall be allowed to vote; and said Union Hospital District Board of Trustees shall give such notice of such election as they shall deem necessary and proper: PROVIDED, that such notice shall appear at least once ten (10) days prior to the date of such election in a newspaper published in Union Hospital District. Such notice shall state the question to be voted upon, shall state the time and place or places at which said election shall be held. The said Union Hospital District Board of Trustees shall likewise appoint the managers of such election, receive the returns and determine the results.

**SECTION 12: Bond election — ballots — voting.**—The Union Hospital District Board of Trustees of Union Hospital District shall have printed and provided for the use of the voters a sufficient number of ballots, which shall be placed at the voting place or places, on which shall be printed the words, "For the issue of Hospital Bonds", and the words, "Against the Issue of Hospital Bonds", and the voters voting for the issue of the bonds shall strike out the words, "Against the issue of Hospital Bonds", and the voters against the issue of the bonds shall strike out the words, "For the Issue of Hospital Bonds".

**SECTION 13: Bonds — maturities — call — interest.**—If a majority of the votes cast at said election shall be in favor of issuing said bonds, the Union Hospital District Board of Trustees shall issue said bonds as serial bonds, the first of which shall mature during the year 1947

## Page 2526

2526                STATUTES AT LARGE            [No. 848

and end with the year 1971; the amount to mature in any one year shall be at the discretion of and determined by the Union Hospital District Board of Trustees. Said bonds shall be sold at public sale at not less than par and accrued interest, and the proceeds therefrom shall be used for the purposes mentioned in Section 10 hereof; PROVIDED, that said bonds so sold shall not bear a rate of interest in excess of four (4%) per centum per annum, payable semi-annually, and the principal and interest thereof shall be payable at such time and places as said Union Hospital District Board of Trustees may prescribe.

SECTION 14: **Bonds—execution.**—That said Hospital bonds shall be signed by the Chairman of the Union Hospital District Board of Trustees and countersigned by the Secretary: PROVIDED, that the signatures of the Chairman and the Secretary may be lithographed or engraved upon the coupons attached to such bonds, and such lithographed or engraved signatures shall be a sufficient signing thereof.

SECTION 15: **Bonds—exempt from taxes.**—That said bonds when issued shall be exempt from taxation for State, County and Municipal purposes.

SECTION 16: **Bonds—payment.**—That the officers of Union County charged with the assessment and collection of taxes shall, at the direction of the Union Hospital District Board of Trustees of Union Hospital District, levy and collect such a tax annually upon all property, real or personal, within Union Hospital District, as will raise a sum sufficient to pay the principal and interest on said bonds, as the same shall become due.

SECTION 17: **Bonds—pledge pay.**—The full faith, credit and taxing power of Union Hospital District are hereby irrevocably pledged for the punctual payment of the principal and interest of said bonds as such principal and interest become due.

SECTION 18: **Repeal.**—All Acts or parts of Acts inconsistent with this Act are hereby repealed.

SECTION 19: **Time effective.**—This Act shall take effect immediately upon its approval by the Governor.

Approved the 13th day of March, 1946

## Page 2527

No. 850]           OF SOUTH CAROLINA                2527

**No. 849**

(R562, H1031, S905)

**AN ACT. To Transfer To And Confer Upon The Union Hospital District Board Of Trustees All The Rights, Title, Interest, Power, Authority, And Duties And Responsibility Of Union County In And To The Wallace Thompson Hospital In The City Of Union, County Of Union And State Of South Carolina.**

BE IT ENACTED by the General Assembly of the State of South Carolina:

SECTION 1: **Wallace Thompson hospital transferred to Union hospital district, Union County.**—That all the rights, title, interest, powers and authority, and the duties and responsibility of Union County, in and to the Wallace Thompson Hospital, located in the City of Union, County of Union and State of South Carolina, be, and the same are hereby transferred to and conferred upon the Union Hospital District Board of Trustees of Union Hospital District in Union County; and the said Union Hospital District Board of Trustees shall have sole authority and exclusive jurisdiction of the same for public hospital purposes.

SECTION 2: **Repeal.**—All Acts or parts of Acts inconsistent with this Act are hereby repealed.

SECTION 3: **Time effective.**—This Act shall take effect upon its approval by the Governor.

Approved the 13th day of March, 1946

---

**No. 850**

(R694, H1276, S1132)

**A JOINT RESOLUTION. Proposing An Amendment To Section 5, Article 10, Of The Constitution Of South Carolina, 1895, So As To Authorize Union Hospital District Of Union County, South Carolina, To Issue Bonds In An Amount Equal To Twenty (20) Per Centum Of The Value Of The Taxable Property Embraced In Said Hospital District, Provided The Qualified Electors Of Said District Vote Favorably Thereon.**

BE IT RESOLVED by the General Assembly of the State of South Carolina:

## Page 2528

**2528    STATUTES AT LARGE    [No. 850**

**SECTION 1: Amendment to article 10, § 5, State Constitution, proposed—bonded indebtedness, Union hospital district, Union County.**—That the following Amendment to Section 5, Article 10, of the Constitution of South Carolina, 1895, be agreed to, to-wit: Add at the end of said section, the following:

"PROVIDED, That the limitations imposed by this Section shall not apply to Union Hospital District, Union County, State of South Carolina, said Union Hospital District being hereby expressly authorized to issue bonds to an amount not to exceed twenty (20) per centum of the value of all taxable property embraced in said hospital district, as valued or assessed for taxation by the State, the proceeds of such bonds to be applied solely to the purpose of acquiring property, erecting or enlarging building or buildings and purchasing equipment for the construction, establishing and maintenance of a public hospital and appurtenances in said Union Hospital District or paying any indebtedness incurred for said purposes, under such restrictions and limitations as the General Assembly may prescribe, and where the question of incurring such indebtedness is to be submitted to the qualified electors of said Union Hospital District, as provided in the Constitution upon the question of bonded indebtedness."

**SECTION 2: Submission to electors.**—That the question of the adoption of this amendment be submitted to the qualified electors of this State at the next election held for members of the House of Representatives of this State, and there shall be furnished at the voting places in this State a sufficient number of ballots, with the following words plainly written or printed thereon: "Amendment to Section 5, Article 10, Constitution of South Carolina, 1895, proposed by a Joint Resolution, entitled "A Joint Resolution proposing an Amendment to Section 5, Article 10, of the Constitution of South Carolina, 1895, so as to Authorize Union Hospital District of Union County, South Carolina, to Issue Bonds in an Amount Equal to Twenty (20) Per Centum of the Value of the Taxable Property Embraced in Said Hospital District, Provided the Qualified Electors of Said District Vote Favorably thereon". ___Yes ___No. Those voting in favor of the amendment shall erase the word "No". Those against the amendment shall erase the word "Yes".

## Page 2529

**No. 851]    OF SOUTH CAROLINA    2529**

**SECTION 3: Time effective.**—This Resolution shall take effect upon its approval by the Governor.

Approved the 23rd day of March, 1946

---

(R563, H1032, S891)    **No. 851**

**AN ACT To Authorize The School Trustees Of Union School District No. 11 To Order And Hold An Election For The Purpose Of Issuing Coupon Bonds For School Purposes.**

BE IT ENACTED by the General Assembly of the State of South Carolina:

**SECTION 1: Union school district No. 11 issue bonds for improvements, Union County.**—That the School Trustees of Union School District No. 11, County of Union and State of South Carolina, be, and they are hereby, authorized and empowered to issue and sell coupon bonds of said School District in the sum of not exceeding three hundred thousand ($300,000.00) dollars, or so much thereof as they may deem necessary for the purpose of acquiring additional property, erecting or enlarging building or buildings, and purchasing equipment for public schools in said School District, or for paying any indebtedness incurred for said purposes; PROVIDED, That a majority of the voters of said School District voting thereon at an election as hereafter provided shall vote in favor of issuing said school bonds.

**SECTION 2: Election on issuance—notice—managers.**—That for the purpose of determining whether or not school bonds shall be issued, as provided in Section 1, the School Trustees of Union School District No. 11 shall order an election to be held at such place or places in said School District as may be designated, in which election only qualified electors residing in the School District shall be allowed to vote; and said School Trustees shall give such notice of such election as they shall deem necessary and proper; PROVIDED, That such notice shall appear at least once ten (10) days prior to the date of such election in a newspaper published in said District. Such notice shall state the question to be voted upon, shall state the time and place or places at which said election shall be held. Said School Trustees shall likewise appoint the managers of such election, receive the returns and determine the results.