**B1040 (FORM 1040) (12/15)**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) ||

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other<br><br>**FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property<br><br>**FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)<br><br>**FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e)<br><br>**FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation<br><br>**FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br>**(continued next column)** | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)<br>☐ 65-Dischargeability - other<br><br>**FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other<br><br>**FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest<br><br>**FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment<br><br>**FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR ||| BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>    /s/Daniel J. Reynolds, Jr. ||||
| DATE ||| PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>UNION HOSPITAL DISTRICT,<br><br>            Debtor. | Case No. 14-03299-dd<br><br>Chapter 9 |
| G. WILLIAM McCARTHY, JR., Plan Administrator,<br><br>            Plaintiff,<br><br>v.<br><br>SPARTANBURG REGIONAL HEALTH SERVICES DISTRICT, INC.,<br><br>            Defendant. | Adv. Pro. No. 19-_____-dd |

**ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT, RECOVERY OF PROPERTY, DAMAGES AND OTHER RELIEF**

Plaintiff, G. William McCarthy, Jr., in his capacity as Plan Administrator (the "Plaintiff") of the Union Hospital District Creditors' Trust (the "Trust"), for his Complaint against Spartanburg Regional Health Services District, Inc. (the "Defendant" or "Spartanburg"), states as follows:

**NATURE OF THE ACTION**

1. This adversary proceeding is based upon rights and claims granted to the Plaintiff by operation of Union Hospital District's (the "Debtor") First Amended Plan for Adjustment of Debts (as amended, the "Plan"), which was confirmed by Order of this Court dated July 24, 2015 (the "Confirmation Order") [Docket No. 260].

2. As described in the Confirmation Order, the Plan was premised upon the agreement by and between the Debtor and Spartanburg pursuant to which Spartanburg agreed to provide medical services, construct and maintain a public hospital in Union County, and continue operating Ellen Sagar Nursing Home (hereinafter "Ellen Sagar") pursuant to the terms of a Lease and Operations Transfer Agreement (the "Agreement" or the "LOTA"). In accordance with the terms of the LOTA and Plan, the Debtor retained rights to certain assets which were transferred to the Trust or held by Debtor at Plan Administrator's request in accordance with the Plan.

3. Subsequent to the entry of the Confirmation Order, and unbeknownst to the Plan Administrator, the Defendant accepted and withheld a total of $5,033,451 belonging to the Trust. Despite receiving those funds at various times starting in 2016, Spartanburg did not turn them over to the Trust. Spartanburg did not disclose to the Debtor or the Plan Administrator that it had received the funds and used those funds for its benefit.

4. It was not until May 3, 2019, when an issue was raised by the South Carolina Department of Health and Human Services (the "SCDHHS") with Spartanburg about a possible overpayment that must be repaid, that Spartanburg notified the Plaintiff that it had received the funds. After notifying the Plan Administrator of the $5,033,451 on May 3, 2019, SRHSD then received additional payments belonging to the Trust in an aggregate amount of $457,607, which brought the total funds received by Spartanburg to $5,491,058. Spartanburg apparently used $37,270 of the funds to pay certain Medicare and Medicaid cost settlement liabilities of the Trust prior to notification of the Debtor on May 3, 2019. Upon request of the Plan Administrator, Spartanburg paid $4,279,228 over to the Trust. However, Spartanburg has failed and refused to

turn over the remaining $1,174,560 to the Trust. In addition to improperly withholding funds, Spartanburg has also paid no interest whatsoever on any of the funds it withheld.

5. The filing of this Adversary Complaint is therefore necessary to seek redress for the improper actions of the Defendant through its wrongful withholding of funds, which are necessary to pay the claims of the creditors of Union Hospital District.

## JURISDICTION

6. This adversary proceeding arises in and relates to the above-captioned Chapter 9 case now pending in this District, and accordingly, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

7. Venue of this adversary proceeding is proper in the Spartanburg Division of this Court pursuant to 28 U.S.C. § 1409 and the LOTA.

8. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

9. If the Court determines it cannot enter final orders or final judgments in this adversary proceeding without consent of the parties, then the Plaintiff hereby consents to the entry of final orders and final judgments by this Court.

## PARTIES

10. The Debtor was a public agency created in 1946 by act of the South Carolina Legislature to provide hospital facilities and medical services to the residents of Union County.

11. Plaintiff is the Plan Administrator under the Plan.

12. Pursuant to Article V, Sections H and I of the Plan, all of the Debtor's remaining assets, claims, causes of action, and rights of recovery were assigned to the Trust.

13. As Plan Administrator, Plaintiff has standing to pursue the causes of action asserted in this Complaint on behalf of the Trust.

14. Upon information and belief, Defendant is a public hospital corporation in the State of South Carolina.

15. Defendant is the Lessee of certain of Debtor's assets pursuant to the LOTA. A copy of the LOTA is attached hereto as **Exhibit A**.

## FACTUAL BACKGROUND

### THE PLAN, CONFIRMATION ORDER AND LOTA

16. On June 6, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

17. On July 24, 2015, the Bankruptcy Court entered the Confirmation Order. The Confirmation Order states at Pages 3-4 that "the Debtor will retain: 1) all cash; 2) all accounts receivables, as well as any rights to refunds, settlements and retroactive adjustments, including those arising in connection with Medicare and Medicaid, due to Debtor as of the Closing Date; 3) title to all real estate and 4) all Rights of Actions, including without limitation, any rights, claims and causes of action against third parties."

18. In accordance with the Plan, on or about July 29, 2015, the Debtor and Defendant entered into the LOTA, whereby certain of Debtor's assets were transferred or leased to Defendant. Consistent with the Confirmation Order, the LOTA at Section 2.2(a)(vii) provided the following list of excluded assets:

> ***Notwithstanding the above, Lessor retains and does not transfer to Lessee the following assets (the "Excluded Assets")***: (1) all cash or cash equivalents of Lessor (other than cash paid for services to be provided in the Health Care Operations after the Commencement Date, if any); (2) the accounts receivable arising from services provided in the Health Care Operations prior to the Commencement Date (including any receivables recoverable pursuant to the South Carolina Setoff Debt Collection Act); (3) the Real Property; (4) the Nursing Home Property; (5) all assets used exclusively in the operation of Union County EMS; ***(6) Lessor's Medicare and Medicaid provider numbers and related rights and authorizations***

4

> ***for reimbursement under Government Programs; (7) all rights to refunds, settlements and retroactive adjustments, including those arising in connection with Medicare and Medicaid, due to Lessor as of the Closing Date and all Avoidance Actions***; and (8) all of Lessor's rights, claims and causes of action against third parties arising out of facts and circumstances prior to the Closing Date, other than those arising under the Assumed Contracts.

(emphasis added).

19. Prior to the Effective Date of the Plan, the Debtor operated a hospital and provided certain health services.

20. Under the Plan and LOTA, Defendant took over operation of the hospital and health services on the Effective Date of the Plan, which Effective Date occurred on August 2, 2015.

21. Although the Defendant had the right to request that the Debtor's provider agreements and related numbers for Medicare and Medicaid be assumed and assigned to the Defendant (similar to other contract rights which were assumed and assigned to the Defendant), the Defendant made an affirmative decision not to take, and did not take, an assignment of the Debtor's Medicare and Medicaid provider agreements and the rights thereunder (including the rights to receive the monies which are the subject of this Adversary Proceeding).

22. In fact, the Defendant expressly excluded any rights or liabilities in connection with the Debtor's Medicaid and Medicare provider agreements and related numbers. *See*, LOTA § 6.1 ("Lessee is not assuming Lessor's Medicare or Medicaid provider numbers but will instead undertake a new enrollment for the Health Care Operations").

**THE MONIES IMPROPERLY WITHHELD BY SPARTANBURG**

23. As set forth above, through the Plan and LOTA, the Debtor retained the right to receive refunds from various sources, including through government funding programs, which

5

rights to payment were transferred to the Trust pursuant to the Plan. Hospitals, such as the Debtor, receive funds, grants and refunds through a number of federal and state programs.

24. In particular, hospitals that treat a large number of indigent patients receive additional support from the federal government in the form of Medicaid Disproportionate Share Hospital ("DSH") payments. Federal and state laws have created a complex formula that establishes each hospital's DSH payment based on location, numbers of beds, and patient demographics, including the percentage who receive means-tested support or who are on Medicare and Medicaid.

25. The Medicaid DSH program is jointly funded by federal and state governments. The federal portion is funded by the Center for Medicare and Medicaid Services ("CMS") which calculates state payments primarily on the demographic makeup of each state.

26. In 2015, the South Carolina DSH fund was $502 million. The federal government paid $355 million and the state funded the remaining $147 million.

27. All acute hospitals in the State of South Carolina pay a provider tax (or fee), which supports both the DSH and Medicaid programs.

28. Consistent with federal law, the SCDHHS makes DSH payments to hospitals serving indigent patients.

29. A hospital's DSH payments are estimated based upon its prior fiscal year and deemed earned at the beginning of its fiscal year. They are audited and reconciled after the end of the fiscal year. DSH payments are reconciled based upon reports submitted by the hospital regarding the medical services which were provided to eligible populations. Some hospitals pay a settlement back to SCDHHS while others receive additional DSH payments.

30. In general, the requests and corresponding right to DSH reimbursements are tied to the hospital's Medicaid provider number.

31. At no point during the 2015 Medicaid DSH period did Defendant operate under Debtor's Medicaid provider number.

32. Upon information and belief, Spartanburg did not operate under any Medicaid provider number during the fiscal year 2015 DSH period.

33. The Debtor paid all fees and taxes attributable to its operations in 2015, including fees related to DSH reimbursements.

34. In the normal course of its operations, SCDHHS remitted various monies attributable to the Debtor's operations to the Defendant, which is operating out of Debtor's former address.

35. In addition, SCDHHS conducted an audit of the Debtor's operations for South Carolina fiscal year 2015.

36. Unbeknownst to Plaintiff until May 3, 2019, Defendant received and accepted monies attributable to UHD's DSH reconciliations as well other Medicaid and Medicare monies belonging to UHD.

37. The following chart reflects the amounts received by the Defendant, which are property of the Trust, the dates and descriptions of the payments:

**--chart appears on the following page--**

| Date SRHSD Received | Description | Amount |
|---|---|---|
| 3/1/2016 | FY 2014 Medicaid interim cost settlement | 301,245 |
| 7/20/2016 | FY DSH Final/5th Payment | 1,375,862 |
| 12/6/2016 | FY 2012 DSH redistribution | 1,574,072 |
| 9/1/2017 | FY 2013 DSH redistribution | 1,742,208 |
| 2/12/2018 | Final FY 2013 Medicaid Settlement | 22,216 |
| 2/12/2018 | Final FY 2013 Medicaid Settlement | 9,555 |
| 3/29/2019 | FY 2014 Final DSH Payment | 8,293 |
| 5/6/2019 | Medicare Part A, B settlements FY 2012 to 2014 | 339,215 |
| 7/30/2019 | FY 2012-2015 Medicare HITECH | 118,392 |
|  |  | 5,491,058 |

38. The rights to the monies referred to in the preceding paragraph were improperly withheld by the Defendant, not transferred to Defendant under the LOTA, are not property of Defendant, and at all times have remained property of UHD and/or the Trust. See Exhibit A at §2.2(a) (7).

39. Neither UHD's Medicare and Medicaid provider agreements, nor UHD's right to payments or reimbursements related to those agreements, were transferred to Defendant, and at all times those related rights remained property of UHD and/or the Trust.

40. In addition, the Defendant did not pay any fees and taxes attributable to Debtor's DSH reimbursements relating to state fiscal year 2015.

41. Notwithstanding the foregoing, Defendant did not disclose to the Trust until May 3, 2019 that Defendant had received various amounts belonging to the Trust starting in 2016.

42. Instead, on May 3, 2019, the Plaintiff was advised by Defendant of the monies received by the Defendant only when SCDHHS raised a DSH overpayment concern. This concern has been subsequently withdrawn by SCDHHS through the actions of the Plan Administrator.

43. In June 2019, after demand therefor, Defendant paid to the Trust $4,279,228 of the withheld funds.

8

44. Despite further demands, Defendant has failed and refused, and continues to fail and refuse to turn over to the Trust the remaining $1,174,560 in funds belonging to the Trust.

45. Defendant is wrongfully withholding the $1,174,560 belonging to the Trust, and Plaintiff is entitled to a judgment ordering and directing Defendant to pay those monies over to the Trust.

46. Plaintiff is also entitled to interest from Defendant from the date of Defendant's receipt of the funds, through and including the date of payment to the Trust, calculated in accordance with South Carolina law, which is the governing law under the LOTA. See Exhibit "A" at §11.4.

## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment and Related Relief Under 28 U.S.C. §2201 and §2202)**

47. Plaintiff repeats the allegations above.

48. Defendant is in possession of $1,174,560.00, which is property of the Trust.

49. Plaintiff made demand on Defendant for payment, but Defendant has failed and refused to pay the $1,174,560.00, which is property of the Trust.

50. Defendant has maintained that it, not Plaintiff is entitled to the funds. Defendant relies on its own "interpretation" of the LOTA, which is disputed by the Plaintiff.

51. An actual controversy therefore exists within the meaning of 28 U.S.C. §2201(a) regarding how the LOTA applies to those monies and whether the monies are property of the Trust.

52. Accordingly, Plaintiff seeks a declaratory judgment resolving the controversy, declaring that the $1,174,560.00 belongs to Plaintiff, and ordering and directing Defendant to immediately pay the $1,174,560.00 to Plaintiff.

## SECOND CLAIM FOR RELIEF
### (Conversion)

53. Plaintiff repeats the previous allegations.

54. Plaintiff has at all times maintained ownership and/or right to possession of the $1,174,560.00 received by the Defendant.

55. Defendant has without authorization, exercised ownership over the $1,174,560.00 to the exclusion of Plaintiff's rights.

56. The Defendant's wrongful acts are inconsistent with the property rights of the Plaintiff.

57. By reason of the foregoing, Defendant has unlawfully converted the $1,174,560.00, and Plaintiff is entitled to damages in at least that amount, plus interest as described herein.

## THIRD CLAIM FOR RELIEF
### (Accounting)

58. Plaintiff repeats the previous allegations.

59. Based on the Defendant's inequitable and improper conduct in converting the property of the Trust over the last number of years, the Plan Administrator is not certain whether there are other monies or property that belong to the Trust in the possession, custody or control of the Defendant.

60. The Plan Administrator, as a fiduciary for all of the Debtor's creditors, should be assured that the Defendant is not in possession, custody or control of other monies or other Trust property not otherwise currently known to the Plaintiff.

61. There is no adequate legal remedy to provide the requisite assurances for the benefit of the Plan Administrator.

62.  As a result, the Defendant should account for all monies received on account of the Debtor's operations or which otherwise may be property of the Trust.

## FOURTH CLAIM FOR RELIEF
**(Breach of the LOTA)**

63.  Plaintiff repeats the previous allegations.

64.  By reason of the foregoing, Defendant has breached the LOTA and Plaintiff is entitled judgment against Defendant for the damages caused thereby.

## FIFTH CLAIM FOR RELIEF
**(Interest on Monies Wrongfully Withheld)**

65.  Plaintiff repeats the previous allegations.

66.  Defendant should have transferred all of the wrongfully withheld funds over to Plaintiff upon Defendant's receipt thereof.

67.  By wrongfully withholding the funds from the Trust, Defendant deprived the Trust of the benefit of those funds over a term of several years.

68.  The withheld funds could have been timely distributed to the Debtor's creditors pursuant to the Plan and those creditors have been deprived of timely distributions by operation of the Defendant's inequitable and improper conduct.

69.  Pre-judgment interest is appropriate herein as there is a sum certain, improperly withheld by the Defendant, which has a detrimental effect on the Debtor's creditors.

70.  S.C. Code § 34-31-20(A) (the "Statutory Interest Rate") provides for pre-judgment interest to be calculated at the rate of 8.75% per annum on monies due.

71.  Based upon the Statutory Interest Rate, Defendant owes Plaintiff interest in the sum of $1,006,766.79 accruing through August 18, 2019, plus continuing interest on the remaining $1,174,560.00 through the date Plaintiff pays such funds to Plaintiff.  Annexed hereto as **Exhibit B** is the calculation of the interest due.

11

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following relief against Defendant:

A. On the First, Second and Third Claims for Relief, judgment in favor of Plaintiff requiring Defendant to pay Plaintiff the $1,174,560, or, in the alternative awarding Plaintiff damages in at least that amount;

B. On the Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant, requiring Defendant to pay to Plaintiff interest of $1,006,766.79 plus continuing interest on the $1,174,560.00 from August 18, 2019 through the date of Plaintiff pays such funds to Plaintiff;

C. Granting Plaintiff post-judgment interest; and

D. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated August 19, 2019    By:    /s/ Andrew H. Sherman
Andrew H. Sherman
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102
Tel.: (973) 643-7000
Fax: (973) 643-6500
asherman@sillscummis.com

By:    /s/Daniel J. Reynolds, Jr.
Daniel J. Reynolds, Jr., I.D. #9232
**McCARTHY, REYNOLDS, & PENN, LLC**
1517 Laurel Street (29201)
P.O. Box 11332
Columbia, SC 29211-1332
(803) 771-8836 (phone)
(803) 753-6960 (fax)
dreynolds@mccarthy-lawfirm.com

*Attorneys for the Plan Administrator/Plaintiff*

12